for argument this morning. First case is 21-056, Class v. Lumpkin. Ms. Weiner. Well, you know we have a judge on our court, but it's Weiner, so that's why I asked. Good morning, and may it please the court. My name is Sarah Weiner, and I'm here on behalf of Plaintiff Appellant Louise Klaas. Mr. Klaas is a disabled veteran who suffered an injury to his lower back during his military service. I'm having a little trouble hearing, or is the sound up, or what's the sound situation? Either that, or you need to speak up. Okay. Sorry, Your Honor. Mr. Klaas suffers from chronic back pain and walks with a cane. Despite this, Defendant Captain Montgomery punished Klaas with six hours in segregated confinement when he could not comply with her order to sit on the floor, and Defendant Captain Trevino forced Klaas to tote his 20-pound mattress and all his belongings on the stairs without assistance. Both incidents violated Mr. Klaas's rights. Okay, I want to say that I in no way condone what was done to your client, but these seem like kind of one-offs in a world where typically it takes more. I mean, the cases that are out there are ones of length where somebody is put in the wrong, you know, room for months, years, whatever. They're not able to survive that, and so on. These are very limited. What case, published case, that's presidential, says this is enough for both the ADA and, well, we'll get to the Eighth Amendment in a minute, but the ADA. So what's your best case? I think the best case is Kadena, Your Honor. In that case, there was a county jail detainee a few days before she was detained. She had had leg surgery, so when she arrived at the jail, she was in a wheelchair, but she was given crutches, and I think it was over the course of a couple days she asked for a wheelchair, wasn't given one. Eventually, the jail evaluated her, and the nurses said, yes, you need a wheelchair. It took a few hours to get it, and in the meantime, she injured herself while on crutches, and the court said that, you know, although crutches are maybe a reasonable accommodation for most people with a leg injury, in the case of that plaintiff, crutches may not have been a reasonable accommodation. They may not have given her meaningful access to the prison because she could not safely ambulate in the prison, and as I recall, that factual scenario happened over the course of just a few days. I'll also note that the incidents alleged in this complaint are one-off, although there are two incidences, and in both incidences, his medical... But they're very different ones. I mean, they're not just forcing him to sit against the wall twice. So, I'm just, okay, I'll study this again, this cadena, but it does not seem to me that that is what most cases are dealing with. They're dealing with the reasonable accommodations over time, and that is not part of this case, right? I'm not sure about that, Your Honor. We only have the two incidents alleged, but we do know that Mr. Klass was given medical restrictions by the prison that were not honored in these two incidents, and so there may have been other incidents that weren't in the complaint, but I don't think it's accurate to say it's just two one-offs because there was an accommodation granted, and then it was ignored, and that's a problem in that those restrictions were ignored twice. To the extent you think the case law demands a pattern, and I sort of disagree with that premise. I don't think that's in the ADA or the Rehabilitation Act, but if there does need to be a pattern, there were two incidents here. You know, and I will say as to the first incident, or as to Mr. Klass's ADA claims, the district court just got the standard wrong. The district court said that Mr. Klass didn't have a claim because he was treated the same as other inmates. Well, and I understand that the district court perhaps did not articulate the standard right, but we can always affirm based on anything that's in the record, so even if, and I'm not saying this is so. I'm going to ask your the standard the district court used was wrong. If using the correct standard you come out the same way, then we would still affirm, right? I mean, I'm not saying you think that's true, but in this case, but just theoretically, that's the way it is. I agree, Principal, although I will offer one caveat, which is I think the court could only appropriately affirm on alternative grounds that were offered by defendants in their answering brief. I don't think it would be appropriate to by the district court nor offered by defendants in their answering brief because that essentially deprives Mr. Klass of the ability to brief that question at all. And then tell me the six hours in the confinement, again, I'm not condoning that, but how did that injure your client? So there are, so under the ADA and Rehabilitation Act don't include a physical injury requirement, so talking about that while he was injured because he was punished for being disabled, I do recognize that under the PLRA he has to allege a physical injury, and he does. I think it's record on appeal through page 13 or 14 he indicates that a result of that incident, it exacerbated, it aggravated his back injuries, partly because he was required to climb stairs to get to segregation. He also alleges that there was no mattress when he was in segregation, so I'm not sure how he was able to sit or stand or sort of what his situation was during those six hours. And so at the motion to dismiss stage, I think those allegations are enough to allege injury to get past the pleading stage. Okay, now let's talk about the Eighth Amendment. I have to say, and I'm again deeply respect the fact that prisoners are not treated particularly well in some prisons, and I'm not again condoning that or anything, but we have gotten cases far worse in terms of claiming the Eighth Amendment in terms of what was done and how long it was done, and we have affirmed the dismissal of those. So again, what is your best case on the Eighth Amendment as far as these, and even if you say this is not just two, that's all that I saw that was alleged was these two incidents. So as to the first incident, this is the pill line incident with Captain Montgomery. You're right, it was six hours. There have certainly been inmates who have been in segregated confinement for longer, but Mr. Klaus was punished because he was physically unable because of his disability to comply with an order. And candidly, Your Honor, I think that's pretty galling. That's not behavior that anyone should condone, and so although there are certainly egregious cases out there... The Eighth Amendment isn't about condoning, okay? It's a much deeper requirement. It's much further off. It's not just, well, if I was running the prison, I'd have better people there or something. It's not that, and you're well aware. So I'm still a little struggling with that. So McFadden, Your Honor, indicates that it would violate the Eighth Amendment to impose discipline or punishment that is here. There was no pedagogical justification, at least none that we would infer on the basis of the complaint. Captain Montgomery said, comply with my order or you will be dragged to segregation. And that was merely for the sake of punishment because he could not physically comply with her order. And that states a violation of the Eighth Amendment. I would also refer the Court to Jones v. Hearn, although it is unpublished, and I understand that Your Honor may be concerned about that. But the facts are interesting and analogous there. An inmate's Eighth Amendment rights were violated when prison officials forced him to choose between accepting a medically unnecessary treatment for tuberculosis or going into medical isolation. And there, the inmate chose the treatment, and there were side effects. And based on that, he stated an Eighth Amendment claim. In response, defendants said, well, he had a choice. He could have just gone to isolation. And the Court said a prison official cannot subject a prisoner to cruel and unusual punishment just because the prisoner is afforded a choice, because the inmate's medical punishment would have been no less arbitrary if he had chosen medical isolation instead of taking the medication. And so the bottom line is prison officials can't punish an inmate for no reason at all, purely arbitrarily. I'm not sure it's unusual to put somebody in confinement for a few hours. It may not be unusual, but I think on these facts it was unconstitutional, Your Honor. To turn to the incident with Captain Trevino, this is the incident in quarantine when he's going up and down the stairs. The district court characterized Class' complaint as alleging mere threatening words, but that's just not what's in the complaint. Instead, Class was ordered to do something, and he complied with that order. And I doubt this Court is prepared to say that a correctional officer's order is just a suggestion or a choice. It's just common sense. If it would violate the Eighth Amendment for an officer to do something directly to an inmate, then the officer cannot avoid liability by ordering the inmate to do that thing to himself. At the complaint, does he say in there that, you know, there was the threat, and as a result of the threat, you know, I went up the stairs and my back hurt or whatever? What are the words? I looked at the complaint, but it's been a while. What else does he say? Evidencing his actions as a result of what was said. So this is Paragraph 14 of the complaint at Record on Appeal 16. Class alleges that he told, and now I'm quoting, Sergeant Poteet about his disabilities and what was going on in his situation about climbing stairs for days. Sergeant Poteet talked to Captain Cesar Trevino, and Captain Trevino responded there was no restriction allowed in isolation, and if the plaintiff did not obey, he is going to be removed from minimum custody and placed in medium custody, plus a major case disciplinary action. And then class continues to avoid situations, which I think he means this situation. Plaintiff climbed stairs with his belongings and mattress that weighed more than 20 pounds each one, hurting more his lower back conditions and damaged more his spinal cord and right sciatica nerves. I think that answers your question, although please let me know if I'm incorrect about that. So the district court, we think, was wrong to say that this was just mere threatening words. The actual inquiry was whether or not Trevino knew that class faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. And again, we think Dowsett, that's the case that we submitted the 28-J letter about, is very analogous. There, the court said, relying on cases like Calhoun and Jackson, that, quote, being forced to carry personal belongings despite serious disabilities and a medical lifting restriction poses an objectively intolerable risk of harm. So the question is just what Trevino knew. And the complaint alleges that class told Poteet, Poteet told Trevino, and we know that Trevino was aware of Mr. Class's medical restrictions because he responded that no restrictions are allowed in isolation, which supports a very plausible inference that Captain Trevino indeed knew about those restrictions. I'll also just pause here. In their 28-J letter, excuse me, defendants argue that class did not allege what Poteet told Trevino. I think a 28-J letter is too late to raise those sorts of arguments, but I did just want to note that here the district court actually did draw the inference about what Mr. Class alleged. At Record on Appeal 289, the court said that Class informed officers about his medical issues and his concerns were relayed to defendant Captain Cesar Trevino, who responded that no medical restrictions were permitted in isolation and that Class would be subject to discipline if he disobeyed orders. So that the district court drew the inference, I think, is good evidence that a reasonable person could draw this inference on the face of the complaint, especially because inferences must be drawn in favor of plaintiffs, and in particular pro se plaintiffs, whose complaints must be construed liberally. If I could turn back to the ADA and RA question just really quickly. I wanted to address two things. To be clear, there's a three-part test for whether or not a plaintiff has stated a failure to accommodate claim. The first is whether or not he's a qualified individual with a disability. The third is whether or not an entity failed to make reasonable accommodations. Those aren't at issue here. See, the only question is the second prong, whether or not the disability and its consequential limitations were known by the covered entity. I want to highlight that the complaint clearly alleges that the Texas Department of Criminal Justice, which is the covered entity for purposes of this analysis, knew of Mr. Class's disability and his need for an accommodation. First, the complaint alleges that Mr. Class told the officers, not only Captains Montgomery and Trevino, who are the actors relevant for the Eighth Amendment claim, but also the officers who began each of those interactions. I don't remember their names. I apologize. But this is at Record on Appeal, pages 13 to 14, then 15 to 16. And second, the TDCJ had imposed medical restrictions, like limited sitting, standing, no climbing, limited lifting. That's at Record on Appeal 45, which also indicates that the entity had knowledge. And finally, even if that weren't the case, Mr. Class walks with a cane, which makes his disability open and obvious. That's the standard announced by this Court in cases like Kadena and Windham. It's telling that the defendants don't even attempt to defend the district court's reasoning on appeal. It's so clearly wrong to deny a failure to accommodate claim on the ground that an inmate was treated the same as other inmates, because that's just another way of saying that the inmate was denied a reasonable accommodation. So, instead, the answering brief adds a new gloss, saying that Mr. Class had to allege that he was denied an accommodation by reason of disability. But there's no need to plead that, because an exclusion that results from a failure to accommodate is, by definition, an exclusion by reason of disability. The case that articulates that principle most clearly is Bennett-Nelson. And there, the Court said that where a defendant fails to meet this affirmative obligation to make reasonable accommodations, the cause of that failure is irrelevant. So, I see I have about five seconds left. All right. So, I'll pause now. Thank you, Your Honor. You've reserved your rebuttal time. All right. We'll hear from Ms. Baumgartner. Thank you, Judge Stewart, and may it please the Court. Factual allegations in pro se complaints taken as true must still raise a right to relief above the speculative level. Mr. Class hasn't done that. At most, his allegations against Captains Montgomery and Trevino are merely consistent with their liability. But under Twombly and Iqbal, if other plausible lawful explanations exist for their behavior, Mr. Class hasn't stated a claim against them. Now, before I turn to talk about the Eighth Amendment claims and then the Rehabilitation Act claims, I'd like to clarify something, a characterization that I believe was just made. In the record at pages 45 and 46, we do see Mr. Class's medical restrictions listed there. But most of them, including the ones that are relevant to this case, no sitting, no climbing, first floor only, et cetera, are slated to begin on April 13th of 2020, which means they would have begun by the time of the incident with Captain Trevino but not at the time of the incident with Captain Montgomery, which took place on March 23rd of 2020. Now, I'll talk about the Eighth Amendment claims. Is that covered in your brief? I mean, I'm not saying that it's critical whether it is. I'm just curious because it strikes me I haven't heard it before. Your Honor, I don't believe we pointed out that specific piece of information in the brief. But of course, in the brief, we do argue that Mr. Class doesn't state a claim against either of the defendants under either of these theories. But I don't believe we pointed out that specific piece of information, no. And what was the differentiation in the onset? I mean, why was the April date the trigger? I don't know, Your Honor. It simply said, the April date, it just says in the record at page 45, start date for these restrictions, 4-13-2020. It doesn't say why it was beginning on that date. But I bring that up to show that those restrictions had not begun, or according, under this record, had not gone into force yet at the time of the incident with Captain Montgomery. And what was the exact date of the Captain Trevino? Because it was April 2020, but I don't... Let me take a look, Your Honor. I have those portions of the complaint in front of me. It says that the climbing stairs began on the 21st of April, but I believe the incident with Captain Trevino began on either the 23rd or 24th, based on what comes later in that paragraph. Now, I'd like to talk about the Eighth Amendment claims first. Mr. Klass argues that he's alleged a deliberate indifference claim, that they were deliberately indifferent to his medical needs. And under... What's your best case for the proposition that this just wasn't enough to get to, even assuming arguendo, that we don't condone this, and I don't, what was done, um, what's your best case for the proposition this isn't enough to rise to an Eighth Amendment event? In other words, that it's not cruel and unusual. Your Honor, um, well, for Captain Montgomery, I'll speak first. The opposing counsel spoke about McFadden versus Lucas. We think that's a good case here for how, um, Captain Montgomery doesn't, uh, how Mr. Klass hasn't alleged that she was deliberate indifferent in such a way that it rises above the possible into the plausible that he's entitled to relief. In McFadden, the court talks about what it considers when the, when considering whether a plaintiff's Eighth Amendment claim is actionable. And one of the things the court considers is whether the defendant officer was motivated by a good faith effort to restore discipline and maintain order. That's, the reason that that's relevant here is because, of course, Mr. Klass has to allege that Captain Montgomery actually inferred the risk of a substantial, of substantial harm to him. And where there's an alternative plausible explanation for Captain Montgomery's behavior that, um, Okay, so you think it was cruel and unusual what she did. It's just a question of whether she was deliberately indifferent. Your Honor, I don't, we disagree that it was cruel and unusual. Okay, that's what I was asking about. Oh, I apologize, Your Honor. If you, if it's not cruel and unusual, it doesn't matter what your motivation was, right? For it to be an Eighth Amendment violation, it has to be cruel and unusual, right? Your Honor, the deliberate indifference inquiry has a couple of different, uh, things to it. First is like what, whether there was deliberate indifference in the first part of that inquiry, I believe is what Your Honor is referencing about whether the conditions were so bad that there was a substantial whether they were objectively so serious. So I believe that that's what Your Honor is referring to. The court talks about that, those two different aspects of the inquiry in a few cases. So I'm just asking, I mean, if she did something that wasn't a cruel and unusual punishment, then it wouldn't matter what her motivation was. That's right, Your Honor. So I'm asking what, what is your position on whether this six-hour punishment was, in fact, cruel and unusual? That's right, Your Honor. Yes, Your Honor, I understand your question now. Of course, we disagree that it's cruel and unusual punishment. And we can see that from different parts of the complaint. As Your Honor mentioned, while six hours, as Your Honor mentioned, may not be something the court condoned, six hours of administrative segregation, relatively speaking, compared to certain cases, that's not, that's not relatively a very long time. Additionally, the complaint says that no disciplinary proceeding was initiated against Mr. Class, and that after this incident took place, there were no sort of consequences that took place on account of his, after he was taken to administrative segregation. Now, as did the incident with Captain Trevino, Mr. Class has failed to allege that Captain Trevino is even aware of a substantial risk of serious harm. As counsel for Mr. Class just said, that seems to be most of what this incident involving the Eighth Amendment and Captain Trevino was about. Now, the complaint says that Mr. Class told Sergeant Poteet about what, about his back injuries and how he had declined stairs several times over the preceding days. This is in the record at pages 15 and 16. And then he says that Sergeant Poteet went and, quote, talked to Captain Trevino. And that's all it says. It does not make any sort of allegations about what Captain Trevino is supposed to have known, what Sergeant Poteet is supposed to have said. It does not even say that Captain Trevino is in the place where he could see Mr. Class, because Mr. Class does allege in this paragraph that he was, had his cane or was walking with his cane. But he doesn't allege that Captain Trevino was around, could see that he was walking with a cane. In fact, it's likely that he could not, because otherwise, why would Sergeant Poteet had to have gone and told him that? So... But didn't this involve quarantining in the middle of the COVID craziness, I guess? I don't know what to call it. April of 2020 was just when everything was shutting down. The governor had put all these restrictions, etc., etc. So it's a little different world than just your ordinary world where somebody's climbing the stairs who shouldn't have to be climbing it. Wasn't the problem that they didn't want to be close to him because of your honor, I don't believe that Mr. Class has made that allegation. It's certainly possible that that was something that was on the officer's mind. Well, you said that, I mean, in your introduction, it says the second episode occurred in April 2020 when Class began running a fever and had to be medically isolated. Yes, ma'am. Okay. Oh, and that's not in yours. I'm sorry, that's in theirs. But that's their allegation. Okay, well, how does that play into this whole Your honor, as you mentioned, it's certainly possible that they did not want to be nearby someone that was suspected of having COVID. And perhaps that's why Mr. Class, to the extent Mr. Class asked for some help to have to carry his belongings, although there is no allegation that he ever did ask, and I'll speak to that in a little bit, but to the extent he wanted that kind of help carrying things up and down the stairs, that might have been one of the reasons that he carried his belongings himself and that no one helped him, though, again, there's no indication that he ever asked. And that takes me actually into the ADA and Rehabilitation Act arguments. In order to allege, of course, a prime official claim under the ADA and Rehabilitation Act, the plaintiff has to plead facts showing that he was disabled, that he was discriminated against, and that the discrimination occurred by reason of his disability. And this court has said that that third prong, the by reason of disability prong, can be satisfied by pleading that the defendants failed to accommodate him. And part of the failure to accommodate claim is pleading facts showing that the defendants knew. But what that means is that the plaintiff has to plead facts showing that he informed the relevant entity of the disability, of the concomitant limitation, and requested an accommodation in direct and specific terms. Now, the problem that we run into here is that on neither of these occasions does Mr. Klass allege that he ever requested an accommodation in direct and specific terms. As to the incident that Captain Truvino, that Judge Haynes and I were just discussing, there's nothing in the complaint that says that he asked for help or that he says that he told Sergeant Poteet about his back surgeries and about how he'd been having to climb stairs over the several preceding days. Even if that is informing them of the disability and the limitation, that's not requesting an accommodation in direct and specific terms. Mr. Klass does allege, as I mentioned earlier, that he walks with a cane, but nowhere does he allege that Captain Truvino was nearby, could see him, knew that he walked with a cane, that he'd had previous exposure to Mr. Klass. During the times when Truvino, you know, interacts with him, did he have the cane or is there an allegation he didn't? Your Honor, there's no allegation either way. He doesn't say that there was any sort of previous interaction with Captain Truvino. On the previous occasions where Mr. Klass had had to climb stairs and that he alleges in the record at pages 15 and 16, Captain Truvino does not appear. He does not appear until the record at page 16 as a... Does Klass allege, you know, as part of his overall allegations that he has a disability, he uses a cane, et cetera, et cetera. So, I mean, is there not an inference that whenever Truvino sees him, he has the cane and is using it? There's no allegation in the complaint, Your Honor, that Captain Truvino has any sort of previous experience with Mr. Klass. I don't mean previous experience. I mean, whenever he interacts with him. Yes, Your Honor, that's what I meant to refer to, that he had no previous interaction, I should say, with Mr. Klass such that he saw the cane or knew that he walked with the cane in that way. But, so, under the court's standard for failure to accommodate claims, Mr. Klass hasn't alleged that Captain Truvino knew about the accommodation that he wanted and... Or that the accommodation was obvious to Captain Truvino. It might have been obvious to Sergeant Poteet, to whom Mr. Klass was speaking, but again, we have no allegation about what Sergeant Poteet said to Captain Truvino. Now, Captain Truvino does say, as counsel for Mr. Klass points out in the record at page 16, that there's no restrictions allowed in isolation. But at most, what that alleges is that Captain Truvino was aware that someone somewhere was trying to avail himself of some kind of medical restriction in some way. It doesn't rise to... And at most, that's simply consistent with Captain Truvino. It will be sixth stage. I mean, to some extent, the arguments seem like, you know, we're dealing with summary judgment. Your Honor, under... We're talking about the inferences. It's a pro se complaint. I mean, it's got to hit the target for sure, but it just sounds more like an argument that might be made in summary judgment, as opposed to looking under Tuomly at what he plausibly alleges and reasonable inferences from that, as Your Honor, under Tuomly and Iqbal, if the complaint, excuse me, alleges facts that are merely consistent with liability, but if there's another alternative plausible explanation that says in which the defendant's behavior was lawful, then the plaintiff has not plausibly pleaded a complaint. It might be possible, but it hasn't crossed the line from possibility into plausibility. What's your best case for that proposition? Tuomly itself, Your Honor. Okay, but that's not this kind of case. No, Your Honor, it's not. But in that case, the Supreme Court was examining what was going on and said, yes, this is one possible... Tuomly is an antitrust case. I mean, it's cited for all kind of stuff. Yes, Your Honor. You know, I mean, it's the law, but I mean, geez, you know, it's a prisoner case. So at least the cases dealing with prisoners are a little more helpful than just the baseline, you know, of Tuomly. I mean, we know Tuomly was an antitrust case, but it doesn't mean it only applies to antitrust. But in the prisoner context and pro se and so forth, now, whether he hits the target, you know, in terms of legal claim, but at least in terms of inferences, you just seem to be arguing, you know, these counter inferences, what's possible and so forth. I mean, it seems like it's really kind of thread, you know, parsing. Your Honor, I apologize, Your Honor. I guess all I'm saying is your argument is, to me, a frame more in what he didn't, quote, prove as opposed to, you know, what's plausible in the sense of what Tuomly and all our other prisoner cases, you know, seem to say. Obviously, in Dawit, the guy is an amputee, so clearly he's an amputee, but does that mean the obviousness has to be only in a situation where, you know, it's so palpable. If you have a cane, that's not enough obviousness. I'm trying to, you know, understand. The inferences that he's allowed from the state standpoint, it just seems the argument is more about what he didn't prove, what he didn't show. Your Honor, our argument of, I understand Your Honor's concern, but it's about what he didn't, what inferences, it's about, as Your Honor says, what inferences can be drawn from the case. But some of these allegations simply are not there about, for example, whether Captain Trevino had any sort of prior knowledge at all that Mr. Klass had that cane or could see it at the time, or about what Sergeant Poteet told him. Some of these allegations simply are not there, and of course the court absolutely does have to construe pro se complaints liberally. If medical restrictions are in a prisoner's records, for example, does that mean, you know, knowledge to all in terms of the, you know, the prison context, or it means if it's in the record, the only people charged with knowing are somebody who had a reason to look at the record and see the file and so forth. You understand my question? Yes, Your Honor. And if it's in the file and it's a restriction, I mean, is it imputed that those in the care of the prisoner, quote, know, you know, about the restriction, or it's only somebody that has a file and know, oh, this guy has a cane? Your Honor, the court's cases indicate both things at different times. Sometimes the court says, well, this person, it's in the medical record, and this person had access to the record, and therefore we know that they saw that. But what's important is that for, well, for deliberate indifference specifically for the Eighth Amendment claim, part of that is that the aware of facts of which they should have been aware but weren't is not enough under this court's decision in Domino v. TDCJ. So for the Eighth Amendment claims, he does have to show that he, or not show, has to allege that they actually knew or actually drew the inference. Now, who is they? Does that mean the man on the spot, the state employee who's on the spot, or does it mean the system? For the Eighth Amendment claims, Your Honor, it would mean these specific defendants who were on the spot because these are claims alleged against them in their official capacity, it's not official, individual capacities, I should say. So it would need to be them. As for the failure to accommodate claims under the ADA and Rehabilitation Act, the Wyndham says that the defendant, that the plaintiff has to plead that he informed the defendant entity about his need for an, about his disability limitation and need for an informed TDCJ, which is part of why it's important that his, some of these medical restrictions weren't in the record at the time of the incidents involving Captain Montgomery, or they had not started at the time of the incidents with Captain Montgomery because then the ADA and RA, excuse me, for the ADA and RA claims, that kind of knowledge can't be imputed to her because nobody at TDCJ would have known. When you have a prison employee dealing with a prisoner one-on-one, how do you establish the predicate for what was known to the state? I mean, you know, it's a big prison, probably, most of them are, and you have individuals, two individuals reacting, and then you undoubtedly have a paper record somewhere that makes very clear what the facts are that this guard has to deal with. How do you, what's the case from your standpoint that best establishes what the state is held to have known in that individual circumstance? What's your best case? Because that's what's at issue. This is a big prison system, probably even a big prison. All right, so this inmate is handicapped. What does that, what has to be known to the person from the state who's interacting with him? God knows it's probably in the state record somewhere, but what has to be known? For the Eighth Amendment claims, Your Honor, what has to be known are the, are facts from which they could infer, the defendant, excuse me, could infer a substantial risk of serious harm, as the Supreme Court has said in Farmer v. Brennan. Now, in Captain Montgomery's situation, Mr. Klass does allege that he said, I can't sit down because of my surgeries. So in that situation, it seems likely that he has alleged that she knew some facts from which she could infer something. Now, whether she should have inferred a substantial risk of serious harm, I can squat and lie down, but I can't. I noticed that there was a potential problem here. Certainly, Your Honor. So those are the kinds of things that for the Eighth Amendment claim, they would need to know. A lot of, in many of the court's cases, it says that they told, that they were told by this, the one that's coming to mind specifically, oh, I'm afraid I can't remember its name at this moment. But in many of the court's cases, what happens is someone is told. I see that I'm running out of time, so if the court has no further questions, we'd ask the court to affirm. Thank you. Thank you, Your Honors. Tell me what puts the state on notice in an individual situation like what happened here. What do our cases say is enough to put the state on notice about the problem? I have two cases. The first is Wyndham, where the court talks about the covered entity's relevant agents. It doesn't spin out what relevant agents means, but it seems to me that the relevant agents are the agents interacting with the plaintiff. The second case I would give you is Delano Pyle at 574 to 75. The court, I think Judge Stewart in fact, held that when a plaintiff asserts a cause of action against an employer or municipality under either the ADA or the RA, the public entity is liable for the vicarious acts of any of its employees as specifically provided by the ADA. Which case were you just reading? That was Delano Pyle, 302 F. 3rd at 574 to 75. You know, I agree that neither one of those cases is precisely head-on to your question, but I think both of them are very close and definitely together indicate that if it is the entity, here the TDCJ, that can violate the ADA or the RA, it is the knowledge of all of its agents, at least all of the relevant agents who interact with the plaintiff, that goes to what the covered entity knew about the need for an accommodation. Does the record show anything about whether the state, whether these employees that interact with the prisoners, whether they have access to relevant information right then on the spot? That's not in the complaint, Your Honor. I think that that might be a question for summary judgment. I also think that the knowledge of the person entering the medical restriction is relevant when we're talking about the ADA and the knowledge of the people interacting with Mr. Klass on the spot. All of those officers were told by Mr. Klass that he could not safely comply with their commands, and they all saw Mr. Klass using a cane. And so their knowledge doesn't have to come from the medical restrictions because they were told directly by the plaintiff that he needed an accommodation. I do want to address the stairs incident. We heard a lot of discussion from my friend on the other side. A lot of those sounded to me like inferences drawn against the plaintiff. Trudvino knew of the restrictions because he said there are no medical restrictions in isolation. Their citation of Twombly is strange. It is an antitrust case, and they would have this court to believe that if you can infer against the plaintiff or for the plaintiff, you should infer against the plaintiff. That's simply not true. I would also note that they have not disputed, and we think it's beyond dispute, that it was error for the district court to dismiss with prejudice without giving Mr. Klass an opportunity to amend his complaint. So to the extent there are any holes in the complaint, and candidly, I don't think there are, Mr. Klass at least deserved an opportunity to try to cure those, especially because he's a pro se plaintiff. Let me ask you something. Are you arguing, or what do you have to say, somewhere in the records of the Texas prison system, there was this information about this, your client. So are you arguing that the state is liable here because in the paperwork in the records, the information was there, and so this particular guard or whoever it was that was interacting with your client was on notice because in the prison system records, the information was there? You're arguing in part, as I understand it, it was obvious he had a cane, okay, and he told them. So that's two pieces of information that puts the state on some notice, but you can put a lot of stock in that. So what are you saying we have held about what the state should have known? So it's all three. Each of those three things we think would be a sufficient independent basis to conclude that the covered entity had knowledge. That he had a cane meant it was open and obvious to the entity's relevant agents. That he asked for an accommodation. He said I cannot climb the stairs safely. I cannot sit. Also put the state on notice. That's cases like Delano Pyle, like Perez. And third, even if that's not enough, we know that the state had the relevant knowledge because there was a medical restriction in his file essentially saying yes, he needs this accommodation, and then that accommodation was denied. What's the closest case you have to, you know, these circumstances we have in this case as to the 88 claim and as to the 28th amendment claim? Oh no, 12B6. I think Douthat is a close case. It's extremely close. This is Douthat. That's the case we submitted the 28J letter about. Well of course they say he was amputated so the disability was quote obvious as some of our cases have used the word obvious, which is one reason why I asked counsel opposite about if he had a cane. I mean does that satisfy the obviousness? But at any rate. Your Honor, I mean if I may answer your question. Yeah. Your Honor, I don't think that there's a salient difference between someone who's an amputee and someone who's walking with a cane. Both pretty clearly indicate to the viewer that that person has mobility issues. Well and then they say it, I think in Dalwick the person asked for I guess specific relief or something, whereas here he doesn't plead it. I'm not sure. I mean we got the 28J and we read it, but. I don't agree, Your Honor, that Mr. Klass didn't ask for an amputation. The court said of course a plaintiff need not request or even know the particular reasonable accommodation he ultimately requires. So it was enough for Mr. Klass to say, I have a disability. I cannot safely comply with your commands. Then it is on the covered entity to figure out what reasonable accommodation would still give Mr. Klass meaningful access to the prison and his ability to ambulate in the prison. Mr. Klass, did he ask to amend? So he said, so as to the first incident, he said, ma'am do what you have to do, but I cannot sit on the floor. No, no, no, I'm asking, did he ask to amend? I know the district court. Oh, yes he did. And Your Honor, let me tell you. So it happened, he asked to amend twice. He requests leave to file an amended complaint. That's record on appeal 104. He said plaintiff also requests that this honor report allow plaintiff to file an amended complaint. And then at record on appeal 220, he filed a motion for leave to file a supplemental complaint, which I think construing sort of things in favor of the pro se plaintiff, asking to file a supplemental complaint certainly could be construed as a motion to amend. Did the district court rule on those or that's kind of caught up in the ruling itself, dismissing with prejudice? I believe the court denied both of those. It's possible the court ignored both of those. The court certainly didn't grant him an opportunity to amend. Okay. I just wanted to make sure I had the circumstance right. Okay. All right. Thank you, counsel. We have your argument. Thanks to both of you. The case will be submitted. Thank you, Your Honor. All right.